and others, 517-0172. I'll note for the record again that Justice Moore is part of this panel. He's unavailable to be here today, of course, but he will be fully participating and will have access to the hearings and oral arguments as well. Counsel, you may proceed. May it please the Court, Counsel, my name is George Ripplinger and I represent the estate of Tamen Freeman through the Administrator Coleman Freeman. When this case began, Tamen Freeman was alive and I was considerably younger. It's been going on now for 18 years, which is more than a third of my time for the Bar. We're here for fairly simple issues, but they're rather important. When a judgment is entered in a suit for my judgment, an amount needs to be in that judgment. In this case, the Court entered a judgment in favor of Plaintiff's decedent and against the Village of Allorton and then referred to an order in another case that was not before the Court, which is an order that in my opinion is void. The Village of Allorton agrees that they made a contract with my client in the bankruptcy court to pay a judgment that had been taken against a police officer, not against the Village of Allorton, for $600,000. They admitted that they had paid $20,000 to date. They were to pay $2,500 per month for 20 years beginning in January 2012. Their first payment they made was in May of 2012 and they've only made a total of eight payments to date. The Village does not contest my argument in this regard. Their brief only discusses prejudgment interest. The Village did not contest that they owed $580,000 at the hearing on the motion for summary judgment. The judge, in fact, didn't really make right his own order. He asked all three parties, an intervener, defendant, and the plaintiff to submit proposed orders and you'll note that the order that was entered in this case, the judge merely signed what had been submitted to him by the intervener. It still says proposed order on the caption of the case. This was a breach of contract suit and the first judgment that was entered in this case against Allerton is this judgment. There are other cases and other matters and other orders that have been shown up in here. They refer to a judgment against Allerton, but there was no judgment against Allerton. Never has been until this judgment. We took a judgment against a police officer. The Village of Allerton then filed under Chapter 9 for bankruptcy. Our judgment was for nearly a million dollars. As we got into the matter, we found out that the size of our judgment compared to the size of our claim, we made a statutory claim against the Village because the judge made a fine and it was not willful and that meant that they had to reimburse the defendant for the amount of the judgment. Anyway, we made an agreement with Allerton because we could have stopped their bankruptcy that we would accept less money paid over a period of time. Now that is a contract. There is no judgment for that in the bankruptcy court. That was something I found out as we were going along. I've been in bankruptcy court about three times in my life, but that's how it's considered in the case law to that effect. When the Village did not pay, we went through a number of different ways of trying to get them to either agree to pay it or pay it or set it aside, set the contract aside. This court heard the argument on rescission in the previous time and held that I could not rescind the contract and therefore we were remanded back to the breach of contract. Intervener would like to think that they have an order in a case that gives them the right to some of this judgment. I think that after the judgment is entered, they can certainly come in and make a claim for the amount that would have been due to plaintiff's receipt. However, the judgment that they had entered in this other matter originally took the whole judgment, including my fee, and we then filed a 214-01 to set aside the judgment that they had for failure to have proper service on the defendant. He was in the county jail at the time they served him and at the time of the alleged trial. We also filed a 214-01 to try and recover our attorney's fees again. Intervener claims that I was present when that order was entered on January 14th. However, that's not when it was heard. It was heard on December 23rd and taken under advisement by the court. The result of that was, again, another order saying that they have a right to a certain amount of a judgment, which did not exist. In any event, that's all well and good, but what we're really here for is because we had a breach of contract and we had the diligent agreement that it was $580,000 and we should have a judgment for $580,000. The second part of our brief is regarding prejudgment interest. Prejudgment interest, of course, is not normally awarded against municipalities. It's only when they unjustifiably withheld payment of a valid debt, where the court can award prejudgment interest. In this case, considering they're supposed to pay us $2,500 a month since January of 2012, and they've made eight payments so far, I think that qualifies as unjustifiably withholding a prompt. The case, the principal case we cited was the case from this court. I believe Justice Welch was on that panel, as a matter of fact. It was Superior Structures Company v. City Assessor. While the court in that case did not reverse an award of prejudgment interest, the court did cite many cases involving prejudgment interest and held that it could be awarded under those circumstances where it is unlawfully and willfully withheld. I know you state the fact that you've only been paid $20,000 over a course of a period of time, but besides that fact, is there any other evidence in the record of, I guess, poor intent on the part of the village? The fact that there was no evidence, no excuse given for failure to pay. They just simply failed to pay. And then they got the benefit of their bargain. They got to go bankrupt, and all their other debts were discharged. And then when it came time for us to get our half of the bargain contract, we haven't gotten it. We're supposed to get $2,500 a month for 20 years. We've got eight payments in six years. That's not much of a reason. And they gave no excuse. There's nothing in the record where they provided any kind of excuse. There was no testimony from anybody from the village of Ellicott. I know the village of Ellicott has its problems, but paying its bills has always been one of its problems, or it wouldn't have gone bankrupt. And that was why I had a 40-50 percent contract with my client, which is 40 percent upon judgment and 50 percent if we had to take additional efforts or appeal to collect it. Civil rights cases are tough to begin with. And going against a village such as Ellerton or Center Village in East St. Louis, there's always difficulty in collecting those judgments. My fee was cut down to 30 percent in this other procedure, which is better than it was. It completely wiped down the first order in that case. But here, I have to say, I take it somewhat personally when somebody takes $100,000 out of my pocket. And that's what happened here. But, again, I consider void judgments since they refer to a judgment that didn't exist. Unless the court has any questions, I am complete. Thank you. Good morning, Your Honor. May it please the court, counsel, I don't like to start an argument by asking to break a rule, but it's my understanding that I have to split my time accordingly with the attorney for the village. And if the court would please allow me to use my cell phone to track that time, I'd be grateful, because I understand that no lights are going to happen over there. Thank you. Eighteen years is a long time, but 18 years of history is important. I want to briefly go through the history of this case and start by saying that when the judgments entered in this case and the legal actions taken in this case began, I was not working for the firm then called Coker Law Offices. It's now Carraway Fisher and Broomball. So when you see those two firm names in the briefs and documentation, I worked for Judge Coker before he became a judge and then took over his firm, and so I'm still representing Ms. Goodloe as he was when he took the bench. This case started in 2005. The Circuit Court of St. Clair County entered a judgment in favor of Tamon Freeman for $978,874.40. Mr. Ripplinger noted, instead of paying the judgment in that case, the village filed Chapter 9 bankruptcy, out of which a $600,000 agreement to be paid in the same monthly installments that Mr. Ripplinger quoted to you, $2,500, was entered into. That was October 30, 2006. But that's when my client comes into this story. May 13, 2007, the Circuit Court of St. Clair County entered an order which became a judgment in favor of my client, the intervener, Stacey Goodloe, against Tamon Freeman. In the amount of $346,400 to include statutory interest, you can see that order at the record C-175. July 23, 2007, a hearing was held in St. Clair County on our citation to discover the assets of Freeman. Freeman did not appear. However, the village of Allerton did. Revealing the $600,000 agreement between the village and Mr. Freeman. The order from this date, which is at the record C-1134 and 1135, says, quote, the funds the village is to pay Freeman shall be paid to Goodloe and the Cocoa Law Offices until Goodloe's judgment is satisfied. Defendant Freeman may not transfer, assign, or sell any interest in his judgment with Allerton, and the village shall preserve adequate funds from that judgment to satisfy Goodloe's judgment. January 14, 2009, an order was entered in which there was a motion to vacate that order up to the court. Again, in all fairness, I was not there, but the order is clearly in the record. The decision was, how were we going to move forward with these proceedings? How was my client to be protected as this case and this collection attempt, which I agree has been an arduous task? How was that going to be viewed in light of the motion to vacate that had been filed by Freeman? C-1136 and 1137 contains that order, and that is the order that the estate cannot escape. That's the order, and maybe some of these arguments that we've heard in this case all the way before we got here could have been made, but they had to have been made eight years ago. That order states, and decides how this $600,000 was to be divided. That order stated that Goodloe and her Chinese cultural offices were going to get $400,000, and Mr. Ripley and his firm and his client to get $200,000. Then in paragraph C of that order, a payment schedule is delineated on how that $600,000 was to be divided in the event that Allerton made payments. The court therefore denied the rest of the motion to vacate. All that language is important, Your Honors, but the most important language is the end. I will quote it. Any means, citations, or other collection notices regarding the Allerton judgment must be consistent with this order. This order, and the parties shall send notice to Allerton of this order. This is a final judgment under Rule 304, and there is no just reason for delaying enforcement appeal above end quote. No appeal was ever taken from that order. No arguments were made.  That's the law, the case that allowed me to intervene in this case in the first place. To protect that amount of money. To protect that order. Mr. Ripley there is right. Allerton has made eight payments. That's true. Let me tell you how those payments were made. And accepted by the estate of Tamon Freeman. Just as the 2009 order dictated they be made. Paragraph C of the 2009 order says. Allerton shall pay out the monthly payments on the Allerton judgment as follows. Each of the aforementioned parties shall receive as a pro rata share each month. Two thirds for Goodwill and her attorneys. One third for Ripleyner. The pro rata being based on subparagraphs A and B. That was the division 400 and 200. According to each month Goodwill and her attorneys will recover $1,686.67 of the Allerton judgment. And Mr. Ripley and his client $833.33. Eight of those payments were made. Those payments were sent to my office. Those payments were cleared through a trust account and sent to Mr. Ripleyner on behalf of his client. There were no complaints then about whether or not this 2009 order was valid. And it is. And it is. Mr. Ripleyner in his own brief correctly again lays out what a judgment must be. In order to be enforceable lay a final value for a definite amount of money. This is exactly the definition of a valid judgment the plaintiff appellant uses in its own brief. Now it sounded like to me that one of the arguments you heard today was that what's wrong with the order that is before us today is it doesn't contain a definite amount of money. It clearly does. And I want to be specific about it. The order from below that we're here for C1160 to 1163 says, quote, Therefore, the court partially grants plaintiff's motion for summary judgment in that the court finds Allerton has not paid as ordered and the debt is accelerated and any stays of enforcement are hereby lifted and vacated. The court partially denies plaintiff's motion as the funds are not to be paid in their remaining entirety solely to Freeman. The village of Allerton will pay both Freeman and Goodloe through their respective attorneys pursuant to the January 14, 2009 order. In addition to the interest that's being argued today calculated at six percent per annum. That's a definite amount of money. It references the 2009 order, which protected my right to collect in this in this action as well. Now, Mr. Ripley seems to be indicating that what I should do is I should I should get away in this case. Let me collect the five hundred thousand or try to. And then go after him and his client or his client directly, excuse me, to get that money. I've already done that. The courts already ruled on that. The court ruled on that in 2009. I don't see why under what authority. That that order can be vacated now. Eight years after the fact. It's not void. Mr. Ripley, to my understanding, was there at the very least to argue the case. I can't tell you because I don't have personal knowledge whether or not he received a copy of that order. But certainly. His argument can't be that this court can go back in time for them and address and undo, if you will, or erase, if you will. The final order of the St. Clair County Court. What's important about it being in St. Clair? It's important because of the history of this case. Mr. Ripley has tried very diligently, and I applaud him sincerely on his efforts to try and collect this judgment. He's been to bankruptcy court. The bankruptcy court said, based on the case law, that they couldn't unwind that bankruptcy. So then he tried to do it in St. Clair County. And that case came up here. And it went back down. And this court said, anything you're going to do to try and enforce this, Mr. Ripley, you have to go back to state court. It's not rescission. And so this is the third attempt. Again, I applaud Mr. Ripley sincerely. But it's his third attempt at this. Why is it important in St. Clair County? Because he's back in state court. And he's locked into a state court remedy. Whatever that remedy is, Your Honors, it cannot and does not, by its nature, invalidate, erase, and destroy a final judgment of the court. That's my condition. I don't have any issue with this death being accelerated. Of course I don't. That's what the lower court has said here. In fact, that's what Halton said in open court. Halton essentially came into this case in open court and said, just tell us who to pay. Well, try and pay. But there's no remedy available here that can get into a time machine and go back and change the final order of the court. That's why I'd ask that you protect the intervener in this case and affirm the lower court in its entirety. Thank you. Counsel. Counsel, may it please the court. My name is Jamie Desai, and I represent the FLE in this matter, Village of Allerton. I have a very brief argument today that is solely directed at the issue raised in the appellant's brief, alleging that the trial court erred by not awarding prejudgment interest. By the very cases cited in the appellant's brief and the case law that is also cited in Allerton's brief, prejudgment interest is not mandatory. It is completely within the sound discretion of the trial court. In regards to a municipality, prejudgment interest isn't generally permitted unless the public entity wrongly obtained funds and illegally withheld them from the plaintiff. Allerton has stated in multiple court proceedings, including in oral arguments in the previous appeal, that the basis for nonpayment has been that Allerton simply did not have the funds to pay the judgment. Allerton also admitted that the judgment was owed. That the appellant took the case to federal court, appealed the previous claim for rescission, and then now is understanding that this was a contract that was violated and brought the proper proceeding, is not the Village of Allerton attempting to become unjustly enriched by the substantial proceedings that have taken place in this case. The Village of Allerton did not take any funds. It was not enriched by nonpayment. Simply, Allerton couldn't make the payments when they were due. By the case law that I just stated, again, this is within the discretion of the trial court. And the trial court in this matter found that, again, Allerton was not unjustly enriched and that equitable considerations did not warrant an award of prejudgment interest. The amount owed in this matter, the judgment, the appellant and plaintiff in this matter has disputed the amount that was owed in previous proceedings. It was during the last appeal that Allerton argued that this is a contract dispute and should be litigated as such, that the amount agreed to by Allerton and the appellant pursuant to the bankruptcy that was filed, it was then that that amount was properly ascertained. Again, we will acknowledge that these proceedings have lasted many years, but that they have done so is not because Allerton is attempting to uphold these proceedings or prevent the plaintiff from obtaining what is owed to him. Setting aside the issue of prejudgment interest, is there an agreement on the amount that's owed? Yes, Your Honor. Allerton has acknowledged, and I don't have those numbers in front of me, but Allerton has acknowledged the payments, I think there were five payments that were made, that those were the only payments that were made toward the amount that was agreed to pursuant to the bankruptcy. And even in the last appeal that was brought up, Allerton also acknowledged at that point that it had not made all of the payments, that the only payments alleged by the plaintiff and the appellant were what Allerton had made. What about, I think reference was made by one counsel about acceleration. Is that an issue? Allerton has not appealed the judgment at all, so we're actually asking that the judgment be affirmed and the trial court's judgment be affirmed in its entirety. And that is the relief that we're requesting, so are there any further questions? I'll make this brief. Just for the record, the court is clear, Allerton hasn't made a payment since 2014. They've admitted they've owed it and they haven't made a payment since 2014. And when you go back to that other case, we filed our 214 because, again, I mentioned why we filed it for Mr. Tate, because he was in jail and not properly served. In fact, all the proofs of service on everything that happened in that case, we contested because they were signed by a non-lawyer and there was no affidavit. And the court knows that's not sufficient. We filed our own 214-01 because we did not have notice of this prior hearing where the entire alleged judgment was awarded. We were not part of that proceeding. We were not notified of it. We found out about it later. Nobody ever sent us a copy of the January order. The clerk didn't, the judge didn't, and counsel didn't, which is why we didn't appeal, quite frankly. We're not a stranger to this court. I certainly would have been here on something that would have deprived me of $100,000 in fees very quickly. But the main issue, the main point I want to make, is all those orders in that other case refer to a judgment that didn't exist, a judgment against Allerton. There was none and there is none. There's not a proper one here because the amount is not shown. Okay. All right. Thank you, counsel. We'll take this matter into advisement. Under the station of legal order.